FILED

08/04/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0701

DA 23-0701

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 177

IN THE MATTER OF:

W.D.,

     A Youth Under the Age of 18

APPEAL FROM:    Youth Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. DJ 2019-23
Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

          Tammy A. Hinderman, Appellate Defender Division Administrator,
Jennifer Penaherrera, Assistant Appellate Defender, Helena, Montana

     For Appellee:

          Austin Knudsen, Montana Attorney General, Christine Hutchison,
Assistant Attorney General, Helena, Montana

          Kevin Downs, Lewis and Clark County Attorney, Ann Penner,
Deputy County Attorney, Helena, Montana

Submitted on Briefs:  July 15, 2026

Decided:  August 4, 2026

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 W.D. appeals the Judgment and Order issued September 29, 2022, by the First Judicial District Youth Court, Lewis and Clark County. The Judgment and Order (1) transferred jurisdiction from Youth Court to district court, (2) transferred supervisory responsibility from youth probation services to adult probation services until W.D. reached age 25, (3) committed W.D. to the Department of Correction (DOC) until age 25 with placement at the Missoula Assessment and Sanction Center (MASC) for sufficient time to complete his required sex offender treatment, and (4) required W.D. to register as a Tier II sexual offender.

¶2 We restate the issue on appeal as follows:

*Whether the Youth Court exceeded its authority under § 41-5-208, MCA, when it imposed a new disposition at the conclusion of the transfer hearing.*

¶3 We reverse and remand to the Youth Court for action consistent with this Opinion.

### FACTUAL AND PROCEDURAL BACKGROUND

¶4 In August 2019, the State filed a petition in Youth Court alleging W.D. committed sexual assault; W.D. admitted the allegation and the Youth Court adjudicated him a delinquent youth. At the March 3, 2021 dispositional hearing, the court placed W.D. on probation until age 20, designated him a Tier II sexual offender but deferred registration, and ordered sex-offender treatment. After unsuccessful residential placements, the State filed a petition to revoke probation under § 41-5-1431, MCA. W.D. admitted the allegations and on September 1, 2021, the Youth Court committed him to DOC for placement at Pine Hills until age 18, with probationary conditions to remain in effect until

2

age 21. The Youth Court expressly stated it would hold a hearing after release from Pine Hills to determine whether registration would be required.

¶5    W.D. was released from Pine Hills upon turning 18 years old in May 2022 and returned to community supervision. On September 26, 2022, the State moved to set a hearing under § 41-5-208, MCA, (a § 208 hearing) to determine whether to transfer jurisdiction to the district court and supervisory responsibility to adult probation and parole. Although the motion alleged multiple violations of the Youth Court's September 1, 2021 Order, no petition to revoke probation under § 41-5-1431, MCA, was filed.

¶6    At the § 208 hearing on September 29, 2022, Juvenile Probation Officer Flynn testified about intensive, daily supervision efforts, W.D.'s refusal to attend outpatient sex-offender treatment, repeated incidents involving unsupervised contact with young children, and other conduct the officer described as "concerning grooming behavior." Defense counsel stated W.D. did not contest transfer but "disagree[d] with the DOC commitment request by the state." The Youth Court found by a preponderance of the evidence that transfer was appropriate, ordered transfer of jurisdiction to the district court and supervisory responsibility to adult probation and parole until W.D. reaches age 25, committed W.D. to DOC until May 18, 2029, recommended placement at the MASC for sex-offender treatment, and ordered that W.D. register as a Tier II sexual offender when not incarcerated. W.D. appeals.

**STANDARD OF REVIEW**

¶7    We review a youth court's interpretation and application of the Montana Youth Court Act de novo for correctness. *In re H.R.*, 2023 MT 210, ¶ 9, 414 Mont. 46, 537 P.3d

3

874. Statutory language is read as a whole and given its plain meaning; we do not isolate terms from their statutory context. *In re H.R.*, ¶ 9. The question whether the Youth Court exceeded the authority § 41-5-208, MCA, grants is therefore a question of law reviewed for correctness.

**DISCUSSION**

¶8 *Whether the Youth Court exceeded its authority under § 41-5-208, MCA, when it imposed a new disposition at the conclusion of the transfer hearing.*

¶9 This appeal requires us to decide the scope of a youth court's authority under § 41-5-208, MCA, when, at the conclusion of a § 208 hearing, the court did more than transfer jurisdiction and supervisory responsibility; it committed W.D. to DOC until age 25 and ordered that he register as a sex offender.

¶10 W.D. argues § 41-5-208, MCA, only gives the Youth Court authority to transfer jurisdiction over a youth from the Youth Court to the district court and transfer supervisory responsibilities from juvenile probation services to adult probation services. W.D. asserts the statute does not give the Youth Court the authority to impose a new DOC commitment, extend the period of State supervision, or impose a condition requiring sexual offender registration that was not contained in W.D.'s prior disposition. W.D. further alleges the Youth Court conducted the transfer hearing as if it were a probation revocation hearing, and by doing so, the court violated his due process rights.

¶11 The State's position is twofold. First, it argues the court acted within its authority under § 41-5-208(4), MCA, when it found by a preponderance of the evidence that transfer was appropriate and then, having found that W.D. had violated his Youth Court disposition,

imposed conditions consistent with §§ 46-18-201 through -203, MCA, including a DOC commitment and registration. The State contends § 41-5-208(4), MCA, is not limited to hearings held after a matter has already been transferred and may be applied at the transfer hearing itself. Alternatively, the State argues the court had authority under § 41-5-1422(1), MCA, to modify the disposition.

¶12 Section 41-5-208, MCA, provides for the transfer of jurisdiction to district court and transfer of supervisory responsibility to adult probation after a youth court's disposition made pursuant to §§ 41-5-1512, -1513, MCA. *In re H.R.*, ¶ 14. The purpose of the transfer is to make sure there is continued compliance with a youth court's disposition after the youth turns 18 years old. *In re H.R.*, ¶ 14. Specifically, § 41-5-208, MCA, provides, "the court may, on the youth's motion or the motion of the county attorney, transfer jurisdiction to the district court and order the transfer of supervisory responsibility from juvenile probation services to adult probation services" to ensure continued compliance with the court's disposition. Section 41-5-208(2), MCA, requires a hearing on whether the transfer should be made, and § 41-5-208(3), MCA, provides that the youth court shall transfer the case to district court if the court finds by a preponderance of the evidence that transfer is appropriate. *In re H.R.*, ¶ 15. Section 41-5-208(4), MCA, provides that if a youth whose case has been transferred to the district court violates conditions of a previously imposed disposition, the district court may impose conditions as provided under §§ 46-18-201 through -203, MCA, only after a hearing. *In re H.R.*, ¶ 16.

¶13 Here, the Youth Court had authority under § 41-5-208, MCA, to transfer jurisdiction to the district court and to transfer supervisory responsibility to adult probation and parole.

5

The statute's text and our precedent make clear, however, that § 41-5-208, MCA, does not authorize a youth court to impose a new custodial disposition or to add conditions such as sex-offender registration at the transfer hearing unless the statutory procedures for adjudicating a dispositional violation have been followed. *In re H.R.*, ¶¶ 14-21.

¶14 In *In re H.R.* we confronted a fact pattern substantially like the one before us. There, as here, the State sought transfer under § 41-5-208, MCA, after a youth had aged out of a youth correctional facility and after the youth court had previously imposed a custodial disposition following a revocation. The youth court in *In re H.R.* heard testimony at the § 208 hearing and then committed the youth to DOC, extended supervision, and imposed a registration requirement. *In re H.R.*, ¶ 8. This Court held that § 41-5-208, MCA, does not grant the youth court authority to modify an existing disposition or to impose a new custodial disposition at the transfer hearing; rather, § 41-5-208(4), MCA, contemplates that the district court may impose conditions after transfer only after a proper post-transfer hearing and finding of a dispositional violation. *In re H.R.*, ¶¶ 18-21. We reversed because the youth court treated the transfer hearing like a revocation hearing without the State having filed a petition to revoke under § 41-5-1431, MCA, and without giving the youth notice that the hearing would be used to adjudicate and dispose of alleged probation violations. *In re H.R.*, ¶¶ 19-20.[1]

---

[1] Section 41-5-1431, MCA, sets forth the statutory process for accomplishing a youth probation revocation when a youth violates terms of his/her probation. A petition for revocation must be filed stating "the terms of probation alleged to have been violated and the factual basis for the allegations." Section 41-5-1431(2), MCA. The standard of proof is the same used in probation revocation of an adult, and in all other respects, proceedings "are governed by the procedures, rights, and duties applicable to proceedings on petitions alleging that the youth is delinquent or a

¶15 The present case is materially indistinguishable from *In re H.R.* in all respects that matter. The State's § 41-5-208, MCA, motion alleged W.D. violated his disposition and sought transfer. The petition to transfer did not request to add conditions or revoke W.D.'s disposition and impose a new one. The transfer motion did not plead the specific violations required by § 41-5-1431, MCA, and the State also did not file a new petition for revocation consistent with the requirements of § 41-5-1431, MCA, in conjunction with its transfer request. The Youth Court did not give W.D. notice that it was proceeding on anything other than the transfer issue. The Youth Court heard testimony and then, at the same proceeding, ordered transfer and imposed a DOC commitment and a registration requirement. The court's written order expressly ties the custodial commitment and registration requirement to the § 41-5-208, MCA, proceeding. Under *In re H.R.*, that is error.

¶16 We emphasize two points of statutory construction and due process that *In re H.R.* and the record require us to make explicit here.

¶17 First, § 41-5-1431, MCA, requires that a petition to revoke probation be filed in the original proceeding and that the petition state the terms of probation allegedly violated and the factual basis for the allegations. Section 41-5-1431(1), (2), MCA. A revocation petition triggers specific procedural protections: screening, notice, and an adjudicatory process that affords the youth the opportunity to contest the allegations and receive the

---

youth in need of intervention." Section 41-5-1431(3), MCA. As such, the youth court must hold a hearing on the petition for revocation. If the court finds the youth violated a term of probation, the court may revoke the prior disposition and "may make any judgment of disposition that could have been made in the original case." Section 41-5-1431(3), MCA.

7

protections attendant to a dispositional adjudication. When the State seeks to revoke a youth's probation and to obtain a new custodial disposition, it must follow the procedures set forth by § 41-5-1431, MCA. *In re H.R.*, ¶ 19. The State did not do so here.

¶18 Second, § 41-5-208(4), MCA, contemplates a district court role after transfer; if a youth whose case has been transferred violates a disposition previously imposed under §§ 41-5-1512 or -1513, MCA, the district court may, after hearing, impose conditions as provided under §§ 46-18-201 through -203, MCA. The plain language of § 41-5-208(4), MCA, presupposes that the matter has been transferred and that the district court will hold a hearing on the alleged dispositional violation; it does not authorize a youth court to adjudicate and impose a new custodial disposition at the transfer hearing without the procedural protections required by § 41-5-1431, MCA. *In re H.R.*, ¶ 18.

¶19 The State urges that § 41-5-208(4), MCA is not limited to post-transfer hearings and that the district court's authority to impose conditions may be exercised at the transfer hearing itself. We reject that reading. The statutory scheme separates the transfer decision from the adjudication of a dispositional violation. That separation protects the youth's liberty and privacy interests by ensuring that any adjudication that could result in incarceration or in the imposition of onerous conditions is preceded by the notice and pleading requirements that § 41-5-1431, MCA, demands. *In re H.R.*, ¶¶ 19-20. The State's failure to file a revocation petition here meant W.D. was not fairly put on notice that the hearing would be used to adjudicate alleged probation violations and to impose a new custodial disposition.

¶20 The State also argues the court had authority under § 41-5-1422(1), MCA, to modify the disposition. However, that statute does not supply the missing procedural protections here. Even if § 41-5-1422(1), MCA, were relevant, the State did not plead or litigate a § 41-5-1431, MCA, revocation in the Youth Court at the transfer hearing; the State sought only a § 41-5-208, MCA, transfer. The absence of a § 41-5-1431, MCA, petition and the absence of the notice and procedural protections that accompany a revocation proceeding are fatal to the State's attempt to justify the court's imposition of a new custodial disposition at the transfer hearing. *In re H.R.*, ¶¶ 19-21.

¶21 Finally, the State argues any error was harmless or limited to the length of the commitment. We disagree. The imposition of a custodial commitment and a registration requirement are not mere technicalities; they substantially affect liberty and privacy interests. *In re H.R.*, ¶ 20. The Youth Court's imposition of a DOC commitment until age 25 and a registration requirement without the procedural safeguards required for revocation substantially harmed W.D.'s liberty and privacy interests. The error is not harmless.

¶22 That said, we do not hold that a revocation petition under § 41-5-1431, MCA, must always be filed in a separate, standalone proceeding distinct in time from a § 208 hearing. The statutory requirements of § 41-5-1431, MCA, are procedural; they require a petition that states the terms alleged to have been violated and the factual basis for those allegations, and they require that the youth be afforded the procedural protections attendant to a revocation adjudication. Nothing in the statute or in *In re H.R.* forbids the State from filing a § 41-5-1431, MCA, petition contemporaneously with a § 41-5-208, MCA, motion and asking the youth court to hear the transfer issue first and, if the court finds transfer

9

appropriate under § 41-5-208, MCA, to proceed immediately thereafter in district court with the § 41-5-1431, MCA, adjudication. Indeed, such an approach can be efficient and fair so long as the youth receives the notice required by § 41-5-1431, MCA, in advance of the hearing and the court conducts the proceedings in the order and under the jurisdiction the statute contemplates. The transfer issue must be resolved first because § 41-5-208, MCA, authorizes transfer and only if transfer is ordered may the district court proceed to adjudicate alleged dispositional violations and impose conditions consistent with §§ 46-18-201 through -203, MCA. If the State elects to proceed in that manner, the petition to revoke must be filed and served in time to give the youth meaningful notice and an opportunity to prepare and be heard on the revocation allegations. The court must also ensure that the youth is afforded the procedural protections § 41-5-1431, MCA, requires before imposing any new custodial disposition or registration requirement.

¶23 The missing element in this case was not the possibility of a consolidated hearing; it was the absence of a § 41-5-1431, MCA, petition and the attendant notice that would have put W.D. on fair notice that the hearing could result in revocation and a new custodial disposition.

¶24 Because no § 41-5-1431, MCA, petition was filed here, W.D. was not fairly put on notice that the hearing would be used to adjudicate alleged probation violations and to impose a new custodial disposition and registration requirement. The Youth Court therefore exceeded the authority § 41-5-208, MCA, grants when it imposed the DOC commitment and registration requirement at the transfer hearing.

**CONCLUSION**

¶25 We find the Youth Court exceeded the bounds of its authority under a § 41-5-208, MCA, transfer because it imposed a new disposition on W.D. in addition to the transfer of jurisdiction and supervision agency.[2] Such a new disposition was not available under § 41-5-208, MCA. Accordingly, we reverse and remand to the Youth Court to amend its Judgment and Order to strike the added DOC commitment, the extended supervision period, and the sexual offender registration requirement.

/S/ INGRID GUSTAFSON

We Concur:

/S/ CORY J. SWANSON
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE

---

[2] We do recognize that this Court's opinion in *In re H.R.* post-dated the Youth Court's Judgment and Order in this case such that the Youth Court did not have the benefit of direction from this Court in addressing the issue at that time.

11